UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                           **MEMORANDUM OF LAW & ORDER**
                               Criminal File No. 15-114 (MJD/TNL)

(1) PATRICK JON EVERS,

        Defendant.

LeeAnn K. Bell and Kevin S. Ueland, Assistant United States Attorneys, Counsel for Plaintiff.

Frederick J. Goetz, Goetz & Eckland PA, Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Defendant's Motion for Judgment of Acquittal or, in the Alternative, New Trial as to Count 2. [Docket No. 102] Because the Court concludes that the evidence is sufficient for a reasonable jury to find Defendant guilty of Count 2 beyond a reasonable doubt and because no miscarriage of justice has occurred, Defendant's motion is denied.

## II.    BACKGROUND

1

The Superseding Indictment charged Defendant Patrick Jon Evers with Count 1: False Statement to Obtain Federal Employees' Compensation, in violation of 18 U.S.C. § 1920; Count 2: False Statement to Obtain Federal Employees' Compensation, in violation of 18 U.S.C. § 1920; and Count 3, False Statements Relating to Health Care Matters, in violation of 18 U.S.C. § 1035. [Docket No. 51]  Count 1 alleged that Defendant made a false statement on May 30, 2104, in a certified Claim Compensation form claiming compensation for leave without pay for the time period from May 19, 2014, through May 30, 2014. Count 2 alleged that Defendant made a variety of false statements during a September 10, 2014, ruse interview.  Count 3 alleged that, from on or about August 22, 2013, through on or about November 14, 2014, Defendant made false statements during treatment regarding his pain and physical capabilities.

On March 21, 2016, the jury acquitted Defendant on Counts 1 and 3 and convicted Defendant on Count 2.  He now moves for a judgment of acquittal or, in the alternative, for a new trial on Count 2.

III.  DISCUSSION

   A.   **Standard for Motion for a New Trial**

Under Rule 33 of the Federal Rules of Criminal Procedure, the Court may vacate any judgment and grant a new trial if the interest of justice so requires.

> The decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court. While the district court's discretion is quite broad—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict, there are limits to it. Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand.

United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002) (citations omitted).

> [M]otions for new trials based on the weight of the evidence generally are disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution. The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict [such] that a miscarriage of justice may have occurred.

United States v. Johnson, 474 F.3d 1044, 1050-51 (8th Cir. 2007) (citations omitted).

### B.     Standard for Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29(a), "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In deciding on the motion, the Court does "not weigh the evidence or assess the credibility of witnesses; that

is the province of the jury." United States v. White, 794 F.3d 913, 918 (8th Cir. 2015). The Court views the evidence and all reasonable inferences from it in the light most favorable to the verdict. Id. "Drawing all reasonable inferences in favor of the verdict, there must be an interpretation of the evidence that would allow a reasonable minded jury to find the defendant[ ] guilty beyond a reasonable doubt." Id. (citation omitted). "This strict standard permits overturning a jury's guilty verdict only if no reasonable jury could find the defendant guilty beyond a reasonable doubt." Id.

    **C.**    **Count 2**

As to Count 2, the Superseding Indictment alleges:

> On or about September 10, 2014, in the State and District of Minnesota, the defendant, Patrick Jon Evers, did knowingly and willfully falsify, conceal and cover up a material fact and did knowingly and willfully make and use a false statement and report knowing the same to contain a false, fictitious and fraudulent statement in connection with the application for and receipt of compensation and payment under the Federal Employees' Compensation Act. Specifically, during an interview relating to the application and receipt of compensation and payment under the Federal Employees' Compensation Act, the defendant represented, among other things, that he was unable to lift more than twenty-one to thirty pounds repetitively, represented that he did not use any free weights while exercising, represented that in conducting bench press exercises he had someone else put weights on the weight bar for him, represented that he could lift up to approximately ninety-five to one hundred pounds when conducting bench press exercises, represented that he could perform triceps pushdown exercises if he

did so while standing up against a wall with his back supported, represented that his overall life style included almost no activity, and represented that he had significant difficulty bending over to the floor when, in fact, the defendant knew these representations were false, all in violation of Title 18, United States Code, Section 1920.

The elements of a violation of 18 U.S.C. § 1920 are:

>*One*, that the defendant knowingly and willfully made a false statement of fact, or made a false statement that concealed or covered up a fact;
>
>*Two*, that the fact was material;
>
>*Three*, that the defendant did so in connection with the application for or receipt of compensation or other benefit or payment under Title 5, United States Code, Section 8101 *et seq.*; and,
>
>*Four*, that the amount of compensation, benefit, or payment falsely obtained exceeded $1,000.00.

([Docket No. 94] Final Jury Instruction No. 9.)  "A 'material fact' is a fact that would naturally influence or is capable of influencing a decision concerning the application for or receipt of federal worker's compensation benefits.  Whether a statement is 'material' does not depend on whether anyone was actually deceived or misled."  (Id.)

### D.   Materiality

Defendant argues that, even if the jury found that all of the statements alleged in Count 2 were false, there was insufficient evidence for the jury to find beyond a reasonable doubt that any of the statements were material.

### 1. Materiality Standard

"The materiality inquiry focuses on whether the false statement had a natural tendency to influence or was capable of influencing the government agency or official. Materiality does not require proof that the government actually relied on the statement." United States v. Baker, 200 F.3d 558, 561 (8th Cir. 2000) (citing United States v. Gaudin, 515 U.S. 506, 509 (1995); United States v. Hicks, 619 F.2d 752, 754-55 (8th Cir. 1980)). "Deciding whether a statement is 'material' requires the determination of at least two subsidiary questions of purely historical fact: (a) 'what statement was made?' and (b) 'what decision was the agency trying to make?'" United States v. Gaudin, 515 U.S. 506, 512 (1995).

> [M]ateriality involves only the capability of influencing an agency's governmental functions, i.e., does the statement have a natural tendency to influence or is it capable of influencing agency decision? The issue is whether the statements, viewed alone, were capable of influencing the function of the [agency]. It is irrelevant what the agent who heard the statement knew at the time the statement was made. A false statement can be material even if the agent to whom it is made knows that it is false.

United States v. Whitaker, 848 F.2d 914, 916 (8th Cir. 1988) (citations omitted).

## 2.     Discussion

The trial produced compelling evidence that Defendant made false statements during the September 10, 2014 ruse interview, as charged in Count 2. First, Defendant, himself, testified that he lied during the ruse interview. Second, the jury was able to compare the statements made by Defendant regarding his physical limitations with the undercover surveillance footage taken of his exercise routine at L.A. Fitness on May 20, 2014, and June 24, 2014. Thus, it is beyond dispute that a reasonable jury could conclude that Defendant made false statements during the ruse interview.

Furthermore, there was ample evidence for a reasonable jury to find beyond a reasonable doubt that Defendant's false statements were material; that is, that Defendant's false statements about his physical capabilities were capable of influencing a decision about whether he was entitled to compensation or whether he could return to work with or without restrictions. See, e.g., United States v. Anderson-Bagshaw, 509 F. App'x 396, 415 (6th Cir. 2012) ("The test for materiality does not demand that [the defendant's] benefits would have been discontinued or reduced absent any given misstatement. Instead, the question is whether [the defendant']s false statements were capable of influencing the decision maker to which she made them.").

Here, Heather Ziegler, a Senior Claims Examiner with Department of Labor Office of Workers' Compensation Programs ("DOL-OWCP"), testified that knowing the extent of Defendant's physical abilities, as depicted in the May 20, 2014, surveillance video would have been relevant to the DOL-OWCP's decision regarding whether he was entitled to receive FECA benefits.  See United States v. Waldren, 431 F. App'x 374, 376-77 (6th Cir. 2011).  She further testified that information revealed in the surveillance video regarding Defendant's physical abilities could potentially have caused the DOL-OWCP claims examiner to request an updated opinion from Defendant's treating physician and to seek a second opinion regarding Defendant's eligibility from another doctor.  See United States v. Moore, 29 F. App'x 222, 225 (6th Cir. 2002).  Zeigler also testified that the DOL-OWCP relies on medical evidence supplied by doctors in determining benefits decisions and assumes that those doctors have full information.

In this case, Dr. Matthew Monsein testified that, upon viewing the depictions of Defendant's physical abilities in the surveillance videos, his reaction was that he would have liked to talk to Defendant about why he was able to do the physical activities depicted in the videos, that the exercises that

Defendant did in the videos could have impacted Monsein's course of treatment of Defendant, that what he viewed in the video was potentially inconsistent with what Monsein knew, that what Monsein viewed in the videos would potentially impact the work restrictions that he had determined applied to Defendant, and that he would have wanted to have known about Defendant's gym activity so that Monsein could make a fair assessment as to whether Defendant would be able to return to work. He testified that Defendant's abilities with regard to individual exercises, as well as Defendant's overall pain level and activity depicted in the video, could have impacted his decision. Monsein further testified that not every video of Defendant's activities would have been relevant; for instance, a video of Defendant sitting in a chair for ten minutes would not have been information that he wanted to follow up on. Overall, Monsein's testimony supports a finding that Defendant's misrepresentations during the ruse interview, which contradicted the activities depicted in the surveillance videos, were material to Monsein's opinion regarding Defendant's ability to work. In turn, Monsein's opinion was relied upon by DOL-OWCP.

Additionally, all of the doctors who testified at trial admitted that, in crafting Defendant's work restrictions, they relied substantially on Defendant's

subjective statements about his pain and his representations of his physical capabilities.

Furthermore, a finding of materiality is supported by Defendant's testimony that, at the time he participated in the ruse interview, he believed that the interview was going to focus on his physical abilities and that the purpose of the interview was to determine his physical capabilities and whether he could return to work. With that belief in mind, Defendant admitted that he intentionally lied about his physical abilities during the ruse interview. A reasonable inference from Defendant's testimony is that he believed his lies were material to the DOL-OWCP's decision to continue his benefits or require him to return to work. Additionally, Special Agent Rebecca Wayerski testified that, during the January 22, 2015 interview, Defendant told her that he was not honest with the ruse interviewer regarding his weightlifting abilities because he was afraid that, if he was honest, his work restrictions would be changed.

Furthermore, Wayerski testified that, if Defendant had given truthful answers during the ruse interview, rather than misrepresentations about his physical abilities and activity level, the investigators could have worked with the

USPS to find employment for Defendant, rather than seeking criminal prosecution.

Overall, the Court concludes that there is substantial evidence upon which a reasonable jury could find, beyond a reasonable doubt, that Defendant's statements as alleged in Count 2 were false and material and that Defendant was guilty beyond a reasonable doubt.  Additionally, the Court concludes that the jury's well-supported verdict must be allowed to stand and no miscarriage of justice will occur by denying the motion for a new trial.

### E. Amount of Benefits Received

Defendant argues that there was no evidence that he received any federal workers' compensation benefits as a result of the false statements that he made during the ruse interview on September 10, 2014.  He asserts that the benefits he received were issued as a result of his submissions of the CA-7 forms and his statements to his doctors; however, the jury acquitted him of the Counts related to his statements in a CA-7 form and his statements to his doctors.  Thus, the Court should reduce Count 2 from a felony to a misdemeanor.

### 1.     Standard for Amount of Benefits Received

Title 18 U.S.C. § 1920 provides for a maximum term of imprisonment of not more than five years, "but if the amount of the benefits falsely obtained does not exceed $1,000, such person shall be punished by a fine under this title, or by imprisonment for not more than one year, or both."

The Jury Instructions instructed the jury that Count 2 had four elements:

> *One*, that the defendant knowingly and willfully made a false statement of fact, or made a false statement that concealed or covered up a fact;
>
> *Two*, that the fact was material;
>
> *Three*, that the defendant did so in connection with the application for or receipt of compensation or other benefit or payment under Title 5, United States Code, Section 8101 *et seq.*; and,
>
> *Four*, that the amount of compensation, benefit, or payment falsely obtained exceeded $1,000.00.

(Jury Instruction No. 9.)

> Section 1920 establishes two levels of sentencing depending on the amount of benefits that a defendant "falsely obtained." Absent a finding that a defendant received more than $1000 in falsely obtained benefits, the maximum sentence for a § 1920 offense is one year of imprisonment. If a defendant is found to have received more than $1000 in falsely obtained benefits, the statutory maximum increases to five years' imprisonment. Because a finding that the amount of falsely obtained benefits exceeds $1000 increases the maximum punishment to which a defendant is exposed, it

>constitutes a substantive element for a felony offense that must be submitted to the jury and proven beyond a reasonable doubt.

United States v. Catone, 769 F.3d 866, 873-74 (4th Cir. 2014) (citation omitted). "[T]he plain meaning of the statute requires that the jury find [] a causal link [between the false statement and his receipt of more than $1,000 in workers' compensation benefits] for a defendant to be subject to the statute's enhanced penalty regime." United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004).

The jury was instructed:

>In determining whether the amount of benefits alleged to have falsely been obtained exceeds $1,000, the amount is calculated based on the difference between the amount of benefits the defendant actually received and the amount he would have received had he not made the alleged false material statement.

(Jury Instruction No. 9.) The Eighth Circuit has indicated that an even lower standard might apply: "[T]he plain terms of [18 U.S.C. § 1920] pertain to 'the amount of the benefits obtained,' not the amount of benefits obtained minus the amount that would have been obtained if no false statement had been made." United States v. Henry, 164 F.3d 1304, 1310 (10th Cir. 1999), quoted with approval in United States v. Banks, 123 F. App'x 246, 248 (8th Cir. 2005). Here, the Government met its burden even under the more stringent standard set forth in the Jury Instructions and applied by the jury.

### 2. Discussion

Defendant lied about his workouts and physical abilities during the ruse interview in order to avoid having work restrictions changed and being required to return to a modified job and forego benefits. Defendant believed that the lies were capable of influencing the DOL-OWCP's decision about his continued receipt of workers' compensation benefits. As noted previously, there was ample evidence that his misstatements were, in fact, material; that is, his false statements were capable of influencing the DOL-OWCP's benefits decision. By lying, Defendant delayed admitting, as he later did to Wayerski during the January 2015 interview, that he could, in fact, probably return to work.

On September 19, 2014, nine days after the ruse interview, Defendant filed a CA-7 form claiming compensation for the time period between September 8 and September 19, 2014. (Govt. Ex. 43.) Nancy Schmitz, United States Postal Service ("USPS") health and resource management specialist, testified that Defendant received at least $1,500 in compensation benefits for the September 8-19, 2014 time period. Defendant continued to submit CA-7 forms and receive compensation throughout 2014 after the ruse interview. In 2015, he received an additional $39,681.64 in compensation and $2,156.20 in medical benefits. (See Govt. Ex. 9.) The jury was correctly instructed that it was required to find,

beyond a reasonable doubt, that the amount of compensation, benefit, or payment falsely obtained exceeded $1,000. Here, the evidence supports a reasonable jury's finding that if Defendant had not lied during the ruse interview, and had told the truth regarding his physical capabilities, he could have returned to work in some capacity and would not have continued to receive benefits – totaling far more than $1,000 – after that date. The Court concludes that there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Defendant received more than $1,000 in falsely obtained benefits. This result does not create a miscarriage of justice.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

>Defendant's Motion for Judgment of Acquittal or, in the Alternative, New Trial as to Count 2 [Docket No. 102] is **DENIED**.

Dated: August 8, 2016         s/ Michael J. Davis
                              Michael J. Davis
                              United States District Court